*Order of determination will be entered accordingly.*

---

### Appeal of HAMILTON MANUFACTURING CO.

Docket No. 2507.   Submitted June 1, 1925.   Decided March 30, 1926.

1. The taxpayer reissued shares of treasury stock to employees, charged the book value of such shares to personal stock accounts of the recipients, credited against such accounts amounts measured by dividend declarations, and charged the same with interest on debit balances. *Held*, that the treasury stock so reissued was outstanding, that the dividend credits may not be deducted from income as additional compensation paid to employees, and that interest charged on debit balances was income to the taxpayer.

2. On the evidence, *held*, that depreciation reserves relating to tangible assets set up by taxpayer prior to March 1, 1913, reflect the actual physical deterioration of such property and should not be disturbed for invested capital purposes.

3. Unadjusted claims for refunds of Federal taxes disallowed as elements of invested capital.

4. Claims for additional deductions on account of bad debts disallowed.

*E. A. Wilde, C. P. A.*, for the taxpayer.
*Arthur J. Seaton, Esq.*, for the Commissioner.

Before Sternhagen, Lansdon, Green, and Love.

This is an appeal from the determination of a deficiency in income and profits tax for the year 1919 in the amount of $5,806.07. In its original and amended petitions the taxpayer alleges 16 errors in the computation of its tax liability for the year involved. At the hearing six of the alleged errors were disposed of by stipulation and a seventh was waived by the taxpayer. The issues remaining for determination by the Board involve the following points: (1) Adjustment of invested capital in connection with reissue of treasury stock; (2) additional compensation of employees;

(3) addition to income of interest on debit balances of stock purchase accounts of employees; (4) depreciation of plant and equipment prior to March 1, 1913, for invested capital purposes, and correct rates of depreciation for period subsequent thereto for income adjustments; (5) inclusion in invested capital of amounts of refund claimed for Federal taxes not yet allowed; and (6) disallowance of a part of deduction claimed on account of bad debts.

### FINDINGS OF FACT.

The taxpayer is a Wisconsin corporation with its principal place of business at Two Rivers. During the taxable year, and for many years prior thereto, it was engaged in the manufacture and sale of wood and steel printers' equipment and of dental cabinets and furniture. It keeps its books of account and makes its income and profits-tax returns on the accrual basis.

The net result of the stipulations filed by the parties to this appeal as a part of the record is to decrease the taxpayer's net income and invested capital as stated in the deficiency letter in the respective amounts of $1,875.03 and $343.27.

Some time prior to January 1, 1919, the taxpayer took into its treasury by purchase from its stockholders certain shares of its outstanding capital stock. Thereafter it reissued some of such shares to various of its employees without cash consideration and charged the book values of the same to personal stock accounts of the persons who received it. Such issues were evidenced by the ordinary common-stock certificates of the taxpayer modified by numerous conditions.

On the face of each certificate this condition was printed diagonally across the usual contract form for such stock:

Notice to whom it may concern: This certificate and the shares of stock which it represents are held by the person named hereon as owner, subject to the conditions and stipulations endorsed on the back thereof.

On the back of each certificate the following conditions and stipulations were set forth:

1. The Hamilton Manufacturing Company, hereinafter called the company, guarantees to ———, hereinafter called the holder, that the within stock shall and will earn 10 per cent on $———, (purchase price) per annum for two years after date of this certificate; but this guaranty shall not require the company to pay out all such earnings as dividends within said two years.

2. The company guarantees to the holder that at the expiration of said two years it will, if the holder so demands, purchase said stock or procure a purchaser thereof at the present purchase price plus interest, less all sums and interest that may then be owing to the company from the holder, and to secure the payment of all such sums the company is hereby given a lien on said stock.

3. The holder agrees to pay interest to the company on any unpaid portion of said purchase price; to devote all cash dividends that may be declared hereafter to the payment to the company of such unpaid portion of

purchase price and interest, so far as necessary to complete full payment of such purchase price; and not to sell, pledge or assign said stock or this certificate within ten years from date of issue of certificate, except to the company.

4. The holder hereby grants to the company an option during the period of ten years from the date of issue of this certificate, to purchase said stock from the holder at any time the holder's employment by the company shall terminate, either by reason of death, resignation or other cause; but this option shall not be enforced by the company if the holder's employment is merely suspended by reason of temporary incapacity. If the company purchase under this option it shall pay the holder, or his legal representatives, the book value of said stock as appears by the last preceding annual statement with interest thereon to the date of such re-purchase, less all sums and interest that may then be owing to the company from the holder.

5. So long as the holder stands to his agreements herein set forth, he may have the privilege of paying the entire portion of the purchase price now unpaid, with interest, out of the cash dividends that may be declared on said stock; but in case of any breach of the conditions hereof by the holder, the entire remaining portion of said purchase price shall become due and payable forthwith.

6. The word "interest" as used herein means interest at the rate of 5% per annum.

7. At the date of the issue of this certificate the holder owes the company for unpaid purchase price $———.

8. If at the expiration of ten years from said date of issue the holder is still in the employ of the company and has complied with the terms of this agreement and has paid the full purchase price above named, he shall be entitled to surrender this certificate and receive in lieu thereof a like certificate freed from the conditions endorsed hereon. If at the expiration of said ten years the holder shall be entitled to such unconditional certificate except that he has not fully paid such purchase price, then he shall be so entitled whenever he completes such payment; and any unpaid balance existing at the end of said ten years shall become immediately due and payable to the company.

9. Any cash dividends received by the holder after he has completed payment of said purchase price shall be the absolute property of the holder, notwithstanding the conditions and options herein contained.

10. The holder agrees to all the above conditions.

Prior to the taxable year, in conformity with the terms set forth above, the taxpayer reissued its treasury stock to certain of its employees in the total number of 227 shares. At January 1, 1919, the debit balances in the accounts evidencing such reissues amounted to $130,846.44. During the year 1919, as dividends were declared, such accounts were credited in the gross amount of $8,528 and charged with interest on debit balances in the amount of $6,280.79. The holders of the conditioned stock certificates were entitled to vote and did vote in meetings of the stockholders of the taxpayer.

From the beginning of its operations, about 1895, until December 31, 1912, the taxpayer acquired buildings, machinery, and equipment at a total cost of $535,272.41, and during the same period wrote off depreciation on the same in the total amount of $89,272.86. The book value of its depreciable capital assets at December 31, 1912.

104881—27——70

and at March 1, 1913, was $446,086.45. Upon audit of the taxpayer's income and profits-tax return for the year 1919 the Commissioner increased accumulated depreciation for the period prior to March 1, 1913, to the amount of $188,134, and reduced the value of the taxpayer's depreciable assets as of that date to $347,324.43, which he made the basis for computing depreciation on the straight-line basis at varying rates down to and including the taxable year. Prior to January 1, 1913, the taxpayer wrote off depreciation from the book values of its depreciable assets in amounts that, in the judgment of its officers, represented the actual facts in respect of the deterioration of its property.

Prior to January 1, 1919, the taxpayer filed claims for refund of Federal taxes paid on account of the years 1912, 1913, 1917, and 1918, in the respective amounts of $842.53, $116.58, $1,161.67, and $20,359.16, or a total amount of $22,515.94. In its income and profits-tax return for the taxable year it included the gross amount of such claims for refund, all of which were at that time and still are undetermined, in the computation of its statutory invested capital for profits-tax purposes.

In its income and profits-tax return for the year 1919 the taxpayer deducted from gross income the amount of $4,408.03, alleged to represent debts ascertained to be worthless and charged off during the taxable year. Upon audit of such return the Commissioner allowed only $2,100 of the amount so deducted.

### OPINION.

LANSDON: The result of the stipulation and of the waiver of one of its contentions by the taxpayer is that the issues remaining for the consideration of the Board may be summarized as follows: (1) The effect of the reissue of certain shares of treasury stock to employees, to be paid for out of dividends, and the collateral transactions connected therewith, on the invested capital and taxable income of the taxpayer; (2) the effect on invested capital of the action of the Commissioner in writing off additional depreciation on the taxpayer's assets for the period prior to March 1, 1913; (3) the disallowance of unadjusted claims for refund of Federal taxes paid in prior years as elements of invested capital; and (4) whether there should be an additional deduction for bad debts ascertained to be worthless and charged off during the year in question. These issues will be discussed in the order of their statement.

The taxpayer contends in the matter of the reissued treasury stock, (1) that the transactions in question were of such a character that the status of such stock as treasury stock was not affected; (2) that the amounts credited to the personal accounts of the employees receiving the conditioned certificates should be regarded as

additional compensation paid to such employees, and therefore deductible from income for the taxable year as ordinary and necessary expenses incurred in trade or business; (3) that invested capital should not be decreased by the amount of dividends credited to the personal accounts of such shareholders; and (4) that interest on debit balances of such accounts charged against the accounts should not be included in taxable income.

The taxpayer contends that the issues of the conditioned stock certificates evidencing transfer of treasury stock to its employees, by reason of the contingent character of the certificates, should not be regarded as capital transactions, and that the conditions imposed were of such a nature that the nominal reissue was a mere segregation of certain shares of its treasury stock without any actual change of ownership. If this claim is conceded, it follows that the amounts credited to the personal stock accounts of employees, although measured by dividends paid to all other stockholders of record, were not distributions of surplus but payments from earnings as additional compensation for services, as alleged in the petition.

The evidence and argument of the taxpayer in support of its first contention are not convincing. We are of the opinion that the stock issued to employees, even though affected by certain conditions agreed to by the recipients, lost its character as treasury stock when reissued. The holders of the so-called contingent stock certificates were entitled to and did receive dividends as credits on their personal stock accounts, and at all times had the right to vote their stock in the meetings of the taxpayer's shareholders. From the date of the certificates so issued such stock was outstanding. The amounts credited to the personal accounts representing these stock transactions were dividends, and their payment automatically reduced earned surplus ratably for that part of the taxable year subsequent to their credit to the personal accounts of the employees. This, however, had no effect on the total amount of statutory invested capital, since the amounts so credited, constructively at least, were paid in for shares. Having decided that the amounts of dividends credited to the personal stock accounts of the employees were, in fact, contributions of capital, it follows that the taxpayer may not deduct such credits from its income as ordinary and necessary expenses. The interest on the debit balances of such accounts was income to the taxpayer and should be included in its gross income for the year in question in the amount of $6,280.79.

It appears from our findings of fact that prior to March 1, 1913, the taxpayer acquired depreciable assets at a cost of $535,272.41, and wrote off depreciation in the amount of $89,272.86. The Commissioner held that such write-off was inadequate, and, by applying

the straight-line method to various classes of assets, increased the taxpayer's depreciation reserve as of March 1, 1913, to the amount of $188,134, thereby reducing its invested capital in the amount of $98,861.14.

The evidence adduced at the hearing is convincing that the reserves for depreciation set up by the taxpayer prior to March 1, 1913, reasonably reflect the actual facts of the physical deterioration of the tangible assets involved and should not now be disturbed. *Appeal of Rub-No-More Co.*, 1 B. T. A. 228, and *Appeal of Russell Milling Co.*, 1 B. T. A. 194.

It appears that since January 1, 1914, and including the year 1919, the taxpayer has depreciated its capital assets on the straight-line method at rates as to which there is no controversy. For this period the only issue involved in the computation of depreciation, and the resulting effects on invested capital and taxable income, is whether the basis of such computation shall be the taxpayer's book value of its assets as of March 1, 1913, or the reduced value resulting from the Commissioner's deduction of alleged additional depreciation accumulated before that date. We have already decided this issue above. The taxpayer is, therefore, entitled to any increase in its invested capital and to adjustments of its gross income for the taxable year which may result from the application of reasonable rates of depreciation to the book value of its assets in the amount of $446,086.45 at March 1, 1913, with due consideration for additions and abandonments.

The Board finds no merit in the taxpayer's contention that the amount of claims for refunds of Federal taxes pending unadjusted before the Commissioner should be included in its invested capital for the taxable year. It may be that eventually such refunds will be paid, and if so it may then become necessary to readjust invested capital and tax liability for the years affected by such payments. Determinations of tax liability by the Commissioner are *prima facie* evidence that the amounts so determined are due, and until reversed by him or by competent tribunals must be accepted as final ascertainments as to the matters involved. To adopt the rule suggested by the taxpayer would establish an endless-chain system of readjustments of tax liability equally unsatisfactory to the Government and to taxpayers.

The taxpayer offered no evidence in support of its contention for a greater deduction on account of bad debts ascertained to be worthless and charged off during the taxable year sufficient to justify us in reversing or modifying the determination of the Commissioner on this point.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*